# Warrior River Coal & Land Company v. Alabama State Land Company.

*Ejectment.*

(Decided Nov. 27, 1907.  45 So. Rep. 53.)

1. *Public Lands; State Lands; Sale; Condition Subsequent.*—The legal title to the lands granted by Congress under the Acts of June 3rd, 1856, and April 10th, 1869, having vested in the state, and the beneficial interest in the railroad companies therein having become individualized, both as to the land and as to the companies, the limitation that the land should be sold to actual settlers only, etc., was, at most, a condition subsequent, and title to the land could be forfeited only by appropriate action of the Federal Government.

2. *Same; Lands of State.*—Although the deed was signed by the trustees in their individual names, it was a conveyance by them as

[Warrior River Coal & Land Company v. Alabama State Land Company.]

trustees only where the deed recited the legislation with reference to the land, its conveyance to the trustees, the official performance of the direction to the governor to convey the lands to the trustees with a full enumeration of the duties, powers, etc., as fixed by the debt settlement act and also the recital that no personal warranty of title should be construed to exist but that it should operate only as a conveyance of all the estate and interest vested in the grantors.

3. *Same; Conveyance; Time.*—The trustees were not incapacitated from conveying the lands remaining after the expiration of the time for the termination of the trust, notwithstanding the provision of the debt settlement act of February 23rd, 1876; the presumption being that they were in fact trustees when they signed the deed, there being nothing in the record to the contrary.

4. *Ejectment; Burden of Proof.*—After plaintiff in ejectment has shown a prima facie right to recover, the burden is shifted to the defendant to prove a better title.

5. *Judgment; Conclusiveness; Dismissal on the Merits.*—Construing rule 28, chancery practice, and section 812, Code 1896, it is held that where defendant in ejectment had filed a bill to quiet title to the land in controversy, prior to the ejectment suit, and plaintiff in that plaintiff was in possession and owned the fee in the lands, and afterwards the case was dismissed on account of defendant's default and judgment entered for the plaintiff, such judgments estopped the ejectment defendant from thereafter claiming title to the land.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by the Alabama State Land Company against the Warrior River Coal & Land Company. From a judgment for plaintiff, defendant appeals. Affirmed.

HENRY UPSON SIMS, and GEORGE P. BONDURANT, for appellant. In actions at common law ejectment, the title must be in the lessor of the plaintiff at the date of his demise, and at the time of the bringing of the suit.— *Etowah Mining Co. v. Carlisle*, 127 Ala. 663. The court erred in not ruling out all the evidence of the plaintiff as irrelevant on the ground that plaintiff had not connected itself with the title shown.— *Edmondson v. Anniston City Land Co.*, 128 Ala. 591. ˙ It is apparent that these lands had to be sold by the state and to settlers in quarter sections and for not over $2.50 per acre.— *Schulenberg v. Harriman*, 21 Wall. 44; *Farmsworth v. M. & P.*.

[Warrior River Coal & Land Company v. Alabama State Land Company.]

R. R. Co.; 92 U. S. 72; *Swann & Billips v. Lindsey,* 70 Ala. 521; *Swann & Billips v. Miller,* 82 Ala. 538; *Sullivan v. VanKirk Const. Co.,* 124 Ala. 225; *Galloway v. Henderson,* 136 Ala. 332.

SMITH & SMITH, for appellee. By virtue of the acts of Congress, the certified lists, the governor's deed, and the acts of the General Assembly of Alabama, Swann & Billups acquired title to the land.—*Swann & Billips v. Gaston,* 87 Ala. 569. By virtue of Rule 28, Chancery Practice, the dismissal of the chancery suit, operates as an estoppel against the Warrior River Co.—*Strong v. Moog,* 74 Ala. 260; *Williams v. Wood,* 121 Ala. 536; *Adams on Equity,* p. 37. The question of title was involved in the chancery suit.—*Collier v. Alexander,* 36 South. 367, and the record in that suit is a complete estoppel in this.—*Strong v. Moog, supra; U. S. v. California & Oregon,* 192 U. S. 355.

McCLELLAN, J.—It was admitted on the trial that the lands in suit were of those granted by the United States to the state of Alabama, in trust, in aid of the construction of railroads in this State. A general history of congressional and legislative enactments in respect of these granted lands has been repeatedly set forth in the reported decisions of this court, beginning with the case of *Swann & Billups v. Lindsey,* 70 Ala. 507. So we see no occasion to state it anew. It will suffice to pass upon, without enumerating all of them, the points taken by appellants in this case against the validity of the record title shown by the appellee as it is traced from the United States, through the state of Alabama and Swann & Billups as trustees, to the appellee, Alabama State Land Company.

By the act of Congress approved April 10, 1869 (16 Stat. 45, c. 24), renewing the grant made by the act approved June 3, 1856 (11 Stat. 17, c. 41), it was "provided that the lands granted by the act hereby revived, except mineral lands shall be sold to actual settlers only in quantities not greater than one-quarter section to any one purchaser, and for a price not exceedng two dollars and fifty cents per acre." The legal title to the granted lands having vested in the state, and the beneficial interest in the railroad company having become individualized as to the land and the companies, respectively, the land here in controversy included, by the performance of all conditions precedent erected by the national grant, the limitation quoted from the act was, at most, a conditon subsequent, a violation of which rendered the estate in the particular instance amenable to forfeiture by the appropriate action of the granting government, and by that only.—*Sullivan v. Van Kirk Land Co.*, 124 Ala. 225, 231, 26 South. 925; 26 Ency. of Law (2d Ed.) pp. 436, 437, and notes thereon collating the authorities. This record, of course, shows no such action on the part of the United States. Certainly it will not be presumed, however conclusively a breach of the quoted condition was shown. Hence the objection urged as upon a violation of the stated condition subsequent is untenable.

The valid investiture of Swann & Billups as trustees with the legal title to those granted lands not otherwise or theretofore disposed of has been, either directly or indirectly, announced by this court in the following cases: *Ware's Case*, 79 Ala. 330; *Standifer's Case*, 78 Ala. 88; *Gaston's Case*, 87 Ala. 569, 6 South. 386; *Miller's Case*, 82 Ala. 530, 1 South. 65; s. c. 89 Ala. 631, 7 South. 771; *Galloway v. Henderson*, 136 Ala. 322, 323, 34 South. 957. No satisfactory reason for a departure from the conclusion declared in the cited authorities has

been presented on this appeal; and it may be suggested
—decision of it not being here required—that after the
lapse of so many years and the fact that many persons
have invested their substance and erected their homes
on- these granted lands in reliance upon the validity of
the title of Swann & Billups as trustees, the doctrine of
repose should be applied to put an end to further litiga-
tion in respect of the title held by these trustees.

The action is common-law ejectment, and several de-
mises are laid in the declaration; but to only one, that
from the Alabama State Land Company, does the testi-
mony adduced relate. The assignments of error made
are all too indefinite to command a review of the matter
complained of, except that predicated upon the giving of
the affirmative charge for plaintiff. This assignment
seems to raise in substance the question to which coun-
sel have given attention in brief and argument. The
deed, purporting to be from the trustees, conveying the
lands in suit, among others, to the Alabama State Land
Company, was introduced in evidence, and, of course,
constitutes an important link in the title involved.
Against the validity of this conveyance appellants in-
sist that it was and is only the individual act of Swann
& Billups, rather than that of the trustees, as such. The
instrument purports to have been executed, viewing on-
ly the signatures thereto, by John Swann and John A.
Billups; and the acknowledgment, while in the usual
form, does not set out the character in which the paper
was signed by them. By the elaborate recitals set forth
in the instrument the history of legislation by the state
of Alabama in reference to the lands involved in the
"Debt Settlement Act," approved February 23, 1876
(Acts 1875-76, p. 130), and their conveyance to the trus-
tees selected as therein provided, and the official per-
formance of the direction to the Governor of Alabama to

convey such lands to the trustees so selected, together with a full enumeration of the powers and duties, and legislation thereon, fixed by the act and carried forward in the Governor's deed is clearly, and we think with perfect accuracy, shown. The granting clause is unmistakable in its intent to convey the right, title, and interest of the trustees, as such, in the lands described. But, as if to put the matter beyond all possibility of cavil, whatever else was shown, in respect of the intended character in which the grantors were acting and the quantity and source of right, title, or interest conveyed, it was finally provided as follows: "Provided, always, and it is hereby declared, that no personal warranty of title shall be construed to exist by or under these presents, but the same shall operate and take effect only as a conveyance of all estate and interest vested in the said John A. Billups and John Swann as such trustees as aforesaid, free from any incumbrance created by them or either of them."

We think it may be justly presumed that the signers of the instrument were in fact the trustees.—*Kent v. Mansel,* 101 Ala. 334, 14 South. 489. There is no denial of it anywhere in the record. If so then the inquiry is: Was further description of the character in which they affixed their signatures to the instrument essential to a valid conveyance by them as trustees of the real estate described? We do not think so. Either the conveyance must be taken as by them as trustees or as individuals. The latter construction cannot prevail, since thereby violence would be done to the express provisions of the instrument. So the inquiry reduces itself to this: Is a conveyance by a trustee, or one like circumstanced, void unless the signature of the purported grantor is attended with terms descriptive of the character in which he undertakes to convey? It seems to us that the only

practicable, and at the same time just, rule to observe in such cases is to look to the entire instrument for the intention thereby shown.—13 Cyc. pp. 621, 622, and authorities cited in notes: *Kingsbury v. Wild,* 3 N. H. 30. And, if shown, its invalidity could not result. The question is not one of due execution of the instrument, but rather one of the capacity in which executed. Ordinarily, execution vel non of instruments of solemnity is not a matter of intention, but of affirmative act according to prescribed form. Here the affirmative act was undeniably performed, and the only unsettled (as by the signature and acknowledgment indicated) feature is the capacity in which the act was done. In such event the whole instrument may be resorted to to ascertain that important fact. If we apply, as we do, this rule to the deed in hand, there is no escape from the conclusion that it is the conveyance of the trustees as such.

It is objected also, that the conveyance to the State Land Company, which bears date of the 8th of December, 1886, was not executed before the termination of the trust, which by the act cited was limited to expire on May 1, 1886. The act, and the deed from the Governor to the trustees in accord with it, renders this objection untenable, wherein it is provided (Acts 1875-76, p. 147, § 19) : "And all lands then [May 1, 1886] remaining unsold shall be conveyed by said trustees to such persons so entitled to share in said trust moneys, or to such person or persons as they may direct." It is affirmed in the premises of the conveyance to the State Land Company that these conditions were fully met and the conveyance to the company was made in pursuance of a valid direction to that end. There was no attempted refutation of this recital. The plaintiff having shown a prima facie right to recover, as it was bound to do, the obligation passed to the defendants to prove a better ti-

tle to defeat it.  This was sought to be done by the in-
troduction of testimony tending to show adverse posses-
sion of a part or all of the lands in suit; and, unless
there was virtue in plaintiff's contention that an estopp-
el obtained to deny to the defendant Warrior River Coal
& Land Company, the grantee of these lands from its co-
defendant Laird, the benefit of such adverse possession,
the general affirmative charge for the plaintiff was er-
roneously given since the testimony introduced by de-
fendants required the issue of adverse possession vel non
to be submitted to the jury.

On July 28, 1903, the Warrior River Coal & Land
Company filed against the Alabama State Land Com-
pany a bill, under section 809 et seq., Code 1896, to quiet
title to these lands in suit, with others.  The bill con-
tains the statutory averments, though the prayer seeks
a broader relief than the statute (section 812) under
such averments allows.  The respondent, answering the
bill, averred that complainant was not in possession of
the lands involved in this ejectment suit, among others,
and had not been for more than ten years preceding the
filing of the bill; that, on the contrary, the respondent
was in possession of the lands; and that the respondent
was the owner in fee of the lands.  On March 12, 1904,
the cause was set down for final hearing, and on motion
of respondent dismissed because of the default of com-
plainant.  This action of ejectment was instituted on
November 24, 1903, several months prior to the dismis-
sal of the chancery cause.  Such dismissal, under rule
28 of chancery practice, was equivalent to a dismissal
on the merits.—*Strang v. Moog,* 72 Ala. 460.  Section
812 of the Code of 1896 is, in the parts here important,
as follows:  "* * * The court shall * * * final-
ly adjudge and decree whether the defendant has any
right, title or interest in, or incumbrance upon such

lands, or any part thereof, and what such right, title,
interest or incumbrance is, and in or upon what part of
the lands the same exists; and such decree is binding
and conclusive upon all the parties to the suit." Under
the construction given this statute by this court, the ti-
tle, right, or interest of the defendant is the matter ad-
judicated, and affirmative relief cannot be had by the
defendant, unless the powers of the court are thereunto
invoked by appropriate pleading.—*Jenkins v. Jonas,* 138
Ala. 664, 35 South. 649; *Interstate B. & L. Association
v. Stocks,* 124 Ala. 109, 27 South. 506; *Kendrick v. Col-
yar,* 143 Ala. 597, 42 South. 110; *Cheney v. Nathan,* 110
Ala. 254, 20 South. 99, 55 Am. St. Rep. 26. Yet (and
the proviso stated does not impinge upon it) the stat-
ute quoted affirmatively and expressly requires, in such
cases, the ascertainment, and thereupon adjudication,
of the character and extent of the defendants' title, right
or interest in all or a part of the lands described in the
bill, and to, as emphatically, make that adjudication
binding on the parties to the suit; and, since the full fee
in title cannot adversarily abide in two persons, the ju-
dicial pronouncement that one holds it entire is an ad-
judication that the other does not.

The merits of the cause, dismissed on March 12, 1904,
may be easily gathered from the pleadings in this in-
stance. The bill invoked the statutory jurisdiction of
the court, and the answer was appropriate thereto. It
negatived the possession of complainant and asserted
that of the defendant, and also averred the ownership in
fee of these lands ,with others, by the defendant. It is
thus readily seen that, by virtue of the statute (section
812), the defendant's title to these, among other, lands
was of the very essence of the merits of the cause. Had
it proceeded in an orderly way to final decree, and the
proof justified the conclusion, the court, under the cited

statute, would have been bound to have declared the title of the defendant; and the statute renders such adjudication binding on the parties. In *Cheney v. Nathan*, 110 Ala. 266, 20 South. 102, 55 Am. St. Rep. 26, it is pertinently said: "The purpose of this statute is simply to fix the status of the land in respect of ownership, to re-establish by decree muniments of title to it. * * *" And it is, of course, a necessary consequence that an adjudication that a defendant holds the full fee in the land is a judical denial of its existence in complainant. Applying to the dismissed cause rule 28, as it should be, the legal title of the respondent to, and its possession of, the premises in question was conclusively determined as between the parties to that cause; and, as Laird's conveyance invested the Warrior Company with whatever right, title, or interest Laird had in the lands described in the deed, the result wrought by the dismissal on the merits concluded in that company the assertion of any right, title, or claim by Laird in bar of appellee's right to recover the lands involved in this action.

The plaintiff (appellee) made out its prima facie case, and the record of the dismissed cause was admissible to show that the defendant's (appellant's) claim of title or right, the reliance to overcome the plaintiff's prima facie right to recover, had been judicially determined between the Warrior Company and the plaintiff; the former then, and at the time the bill in equity was filed, asserted its right and title under the conveyance from Laird. The purpose and effect of the evidence was to present an estoppel against the Warrior Company to again plead a judicially determined matter, and was not relied upon by plaintiff as evidence of title for recovery of the land in controversy.

The affirmative charge was, therefore, correctly given for the plaintiff (appellee), and the judgment is affirmed.

Affirmed.

TYSON, C. J., and DOWDELL and ANDERSON, JJ., concur.