David M. LERCUX and Theresa M. Leroux, Plaintiffs,

v.

The LOMAS & NETTLETON CO., American Bankers Insurance Company of Florida, and Stark, Johnson & Stinson, Inc., Defendants.

Civ. A. No. 85–0012–Y.

United States District Court,
D. Massachusetts.

Jan. 14, 1986.

Norman F. Lazarus, Bernstein & Lazarus, Boston, Mass., for plaintiffs.

Thomas J. Daugherty, Skadden, Arps, Slate, Meager & Flom, Boston, Mass., John C. Fricano, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiffs, David and Theresa Leroux ("the Lerouxs") bring this action against defendants The Lomas & Nettleton Co. ("Lomas"), American Bankers Insurance ("American Bankers"), and Stark, Johnson & Stinson, Inc. ("Stark") in a complaint filed January 2, 1985.

The Lerouxs allege that, without their knowledge or consent, the three defendants made various transfers of their home owners insurance policy. These transfers left the Leroux dwelling, appurtenant structures, and personal property inadequately insured against loss by fire. The Lerouxs also allege a loss of coverage for additional living expenses. As a result, the Lerouxs charge each defendant with breach of Mass.Gen.Laws ch. 93A, breach of contract, negligence, and deceit. The Lerouxs

assert subject matter jurisdiction based on diversity of citizenship with an amount in controversy for each Count in excess of $10,000.

Beyond the merits of the matter, the procedural conflicts are significant. On February 28, 1985, defendants Lomas, American Bankers, and Stark moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), lack of subject matter jurisdiction; 12(b)(6), failure to state a claim upon which relief may be granted; and 9(b), failure to plead fraud with particularity. The defendants also moved for an award of costs and expenses pursuant to Fed.R.Civ.P. 11.

Approximately a week *later,* on March 7, 1985, the Lerouxs voluntarily dismissed party defendant Stark pursuant to Fed.R. Civ.P. 41(a)(1)(i).[1] On the same date, Leroux served a copy of the Notice of Dismissal on defendants' counsel. Voluntarily and as a matter of right, the Lerouxs purport to dismiss only those counts against defendant Stark: Counts III, VI, IX and XII. By this method, the Lerouxs seek to cure a defect in diversity while preserving the core of their complaint against the other two defendants.

### I. Factual Background

Based on the averments in the Complaint and accepted as true for purposes of this motion only, the Lerouxs assert the following facts. Until October 24, 1982 the Lerouxs owned and occupied a residence at 30 Topcliff Street, Billerica, Massachusetts. This home was mortgaged to the Veterans Administration and insured with the Hanover Insurance Company, 1400 Mechanics National Tower, Worcester, Massachusetts. The Lerouxs made monthly payments for principal, interest, real estate taxes and home insurance on this residence to the mortgagee, Lomas, apparently through Marshall Q. Trubey Insurance Co. in Lowell, Massachusetts.

At some time during the first six months of 1978, Lomas purchased or assigned the

---

**1.** The Lerouxs did not identify a particular subsection of Fed.R.Civ.P. 41 on their March 7, 1985, Notice of Dismissal. For purposes of this motion, the Court will act as if the Notice was filed under 41(a)(1)(i) for none of the other subsections apply, the Lerouxs' dismissal being neither stipulated, Rule 41(a)(1)(ii), nor requiring court order, Rule 41(a)(2).

Lerouxs' mortgage without notifying them. On or about December 5, 1978, the Lerouxs received a "Notice of Cancellation" from Hanover Insurance Co., alleging non-payment of premium. Despite the Lerouxs' regular monthly payments for mortgage, interest, taxes and insurance, Lomas unilaterally and without the Lerouxs' consent placed the Lerouxs' homeowners insurance with American Bankers through Stark. From 1978 to 1982, American Bankers and Lomas had a continuing business relationship in which a substantial number of homes mortgaged to or serviced by Lomas were insured with American Bankers.

On or about May 4, 1981, Lomas substituted a fire and extended coverage policy (Form DP–1) for the Lerouxs' existing and standard HO3 homeowners policy. The standard policy covered the dwelling, appurtenant structures, personal property, and additional living expenses.

The Lerouxs had no knowledge of this policy change because neither Lomas nor American Bankers sent notice of the change by certified mail, allegedly required by law. Apparently, notice sent by regular mail on or about April 9, 1982 failed to reach them. The Lerouxs assert that Lomas knew or should have known that the new plan was not a homeowners policy as defined by the Commonwealth of Massachusetts Insurance Commission.

On October 24, 1982, the Lerouxs' home at 30 Topcliff Street in Billerica was totally destroyed by fire. In addition to the residence, the Lerouxs lost all family possessions and an in-ground swimming pool. When the Topcliff home was destroyed, the Lerouxs suffered financial and emotional distress because of their inadequate insurance coverage. According to the Lerouxs' complaint, the actions of Lomas, American Bankers, and Stark constitute breach of contract, negligence, deceit, and breach of Mass.Gen.Laws ch. 93A.

As a result of the October 24th fire, the Lerouxs moved to a new home at 34 Manomet Avenue, Hull, Massachusetts, where they currently reside.

## II. Jurisdiction

The Court will treat paragraph six of the Lerouxs' complaint as invoking the subject matter jurisdiction of this Court based on diversity of citizenship. On the facts alleged above, the Court accepts as true for purposes of this motion that the Lerouxs are citizens of Massachusetts, despite the use of the word "reside" and "resident" in the complaint.

Also accepted as true for purposes of this motion, Lomas is a duly organized Connecticut corporation with its principal place of business at 230 George St., New Haven, Connecticut. Beyond this, Lomas is a wholly owned subsidiary of Lomas & Nettleton Finance Corporation, a duly organized Delaware corporation with its principal place of business at 2001 Bryan Tower, Dallas, Texas. American Bankers is part of the American Bankers Insurance Corporation with its principal place of business at 600 Brickell Avenue, Miami, Florida. Finally, Stark is a duly organized Massachusetts corporation with its business offices at 32 Franklin Street, Worcester, Massachusetts.

For purposes of this motion only and based on these facts, the Court concludes that Lomas and American Bankers are not citizens of Massachusetts and, as such, are properly diverse in citizenship to the Lerouxs.[2]

If the Lerouxs are to assert subject matter jurisdiction based on diversity of citizenship, however,[3] the diversity must be

---

2. Although Lomas challenges the Lerouxs' averments of corporate citizenship for their alleged lack of explicitness and specificity, such a challenge fails to reach the threshold of 'jurisdictional defect'.

3. The Lerouxs seem to allege that federal question jurisdiction also exists. Brief in Opposition to Defendants Motion to Dismiss at 5, March 11,

1985. The Court takes judicial notice of Lerouxs' full statement: "As previously noted, the Plaintiffs allege that the subject Complaint raises a Federal question vis-a-vis the Federal Trade Commission Act and the Defendants' violation of a valid consent decree. *However, this issue is now moot by the dismissal of the counts against SJ & J [Stark]."* [Emphasis added.] *But see* "Furthermore, this case involves a substantial

complete as to all parties. *Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). Yet, on the very face of the complaint the Lerouxs assert facts which establish that Stark, one of the party defendants, is not diverse. Therefore, as of the filing of the complaint on January 2, 1985, as well as on the date which the defendants filed their several motions to dismiss, February 28, 1985, a jurisdictional defect blemished the Lerouxs' complaint because both party defendant Stark and party plaintiffs Lerouxs were citizens of Massachusetts.[4]

Absent the Lerouxs' March 8, 1985 Notice of Dismissal or other corrective amendment, this Court would have been required to allow the Lomas' motion to dismiss pursuant to 12(b)(1). However, the Court rules that the Notice of Dismissal appropriately rectified the jurisdictional defect by dropping the non-diverse party in a timely manner. In so holding, the Court has considered and answered the following questions:

1. Can a Notice to Dismiss be utilized to drop the one nondiverse party and thus cure a jurisdictional defect?

federal question involving the interpretation of the Federal Trade Commission Act and the Consent Decree signed by the defendants Lomas and Nettleton." The Court will not scrutinize this inconsistency at this time because the Court rules below that it has jurisdiction based on diversity of citizenship.

**4.** Lomas argues that, absent diversity, this Court lacks subject matter jurisdiction over the *entire* proceeding and, therefore, it cannot properly assert jurisdiction over a *part, i.e.* the Lerouxs' Notice of Dismissal. There are two flaws here. First, if the Notice of Dismissal under Rule 41(a)(1) is a proper way to cure a jurisdictional defect (and was appropriately executed), this argument will fail. Even more fundamental, it is well-established that this Court may take jurisdiction in order to determine jurisdiction. *United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

**5.** Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure provides, in pertinent part, that "an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs."

2. Is a Notice to Dismiss dated *after* the filing of the motions to dismiss on February 28, 1985 proper?

3. Will a proper Notice to Dismiss cure a jurisdictional defect retroactive to the date of the filing of the complaint?

The Court answers all of these questions affirmatively.

### III. Fed.R.Civ.P. 41(a)(1)(i)

First, can a Notice of Dismissal be utilized to drop the one nondiverse party and thus cure a jurisdictional defect?

Lomas alleges that, where Rule 41 speaks of an "action," [5] the Rule means the entire controversy. In this, Lomas relies primarily on *Harvey Aluminum, Inc. v. American Cyanamid Co.,* 203 F.2d 105, 107–08 (2d Cir.), *cert. denied,* 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953) which states: "[R]ule 41(a)(1) provides for the voluntary dismissal of an 'action' not a 'claim'; the word 'action' refers to what has traditionally been termed 'cause of action'." *Id.* at 108. Lomas' reliance is misplaced.[6]

**6.** Lomas similarly relies on *Smith, Kline & French Laboratories v. A.H. Robins Co.,* 61 F.R.D. 24, 28–29 (E.D.Pa.1973) ("Both Rules 41(a)(1) and 41(a)(2) apply by their terms to dismissal of an 'action.' The reference to an 'action' in Rule 41(a) contrasts with Rule 41(b), which provides that a defendant may move for dismissal of an action or of any claim against him.... Therefore, when Rule 41(a) refers to *dismissal of an 'action',* there is no reason to suppose that the term is intended to *include the separate claims which make up an action.* [Emphasis in original] ). Lomas further relies on *Neiman Marcus Co. v. Lait,* 14 F.R.D. 159, 160–61 (S.D.N.Y.1953) (Where the court vacated plaintiffs' Notice of Dismissal that was directed at some but not all defendants, the court noted, "A partial dismissal cannot be effected by mere notice. Rule 41(a) ..., relied upon as authority for such a dismissal ... permits it only where the subject is the entire action as distinguished from a claim against one or more but less than all of the defendants"). The Court rejects this analysis, relying instead on the sound logic of the District Court of Massachusetts discussed below.

The Second Circuit itself has, however, limited *Harvey Aluminum* to its facts. *Thorp v. Scarne*, 599 F.2d 1169, 1172–77 (2nd Cir.1979). In limiting *Harvey Aluminum,* the Second Circuit in *Thorp* pointed to an extensive, several day evidentiary hearing as an "extreme" which explained why the court prohibited the plaintiffs' dismissal of one among several defendants. *Id.* at 1172–1176. Significantly, another judge of this court has squarely rejected *Harvey Aluminum. Terry v. Pearlman,* 42 F.R.D. 335, 337 (D.Mass.1967) (Where a temporary restraining order enjoined a bank and trust company and plaintiff filed notice of dismissal of the action against all defendants who had not filed an answer, the court denied a motion to vacate the notice of dismissal).[7]

Relying upon *Terry v. Pearlman,* this Court holds that, where Rule 41 speaks of an "action," this means all of the claims against any one defendant, and not necessarily all of the claims against all defendants. *Terry v. Pearlman,* 42 F.R.D. 335, 337 (D.Mass.1967). *See also Plains Growers, Inc. v. Ickes-Brown Glasshouses, Inc.,* 474 F.2d 250, 254–55 (5th Cir.1973) (Where the court compared dismissal by notice and dismissal by motion under the two prongs of Rule 41, it concluded that "it was intended by the rule makers to permit dismissal against such defendants as have not served an answer or motion for summary judgment, despite the fact that the case might remain pending against the other defendants.") *Id.* at 225. In holding that Rule 41 is an appropriate procedure to dismiss defendant Stark, the Court also looks to *Graphic Realty & Discount Co. v. Home F. & M. Ins. Co. of Cal.,* 193 F.Supp. 421, 422 (D.Mass.1961). There the court allowed plaintiffs to establish the requisite diversity by dismissing the action as against a defendant whose citizenship was the same as that of a plaintiff. Although the plaintiffs' motion required leave of court pursuant to Rule 41(a)(2), the facts are similar:

> While it is clear that complete diversity of citizenship of parties plaintiff from the citizenship of the parties defendants is necessary to the existence of federal jurisdiction, it is equally clear that if federal jurisdiction does not exist at the time of filing a complaint, it can be acquired by dismissing the action as to a defendant whose citizenship is the same as that of one or more of the parties plaintiff.

*Id.* at 422. [Citations omitted] *See also Brown v. Texas & Pacific Railroad Co.,* 392 F.Supp. 1120, 1123 (W.D.La.1975) (holding that a federal district court has the power to perfect its diversity jurisdiction by dropping the nondiverse party as long as the nondiverse party is not indispensable). The Court must take the Lerouxs at their word that Stark is "clearly a very dispensable party."

■ Therefore, the Court rules Lerouxs' dismissal of *all* claims against Stark appropriate pursuant to Rule 41(a)(1)(i). The dismissal of all counts against Stark is thus a proper method to cure the jurisdictional defect unless, of course, the Lerouxs' Notice came too late.

Is a Notice to Dismiss dated *after* the filing of the motions to dismiss on February 28, 1985, proper? The answer to this question is critical, for the Lerouxs did not effectuate their dismissal of Stark until seven days *after* the defendants filed their motions to dismiss.

Rule 41(a)(1)(i) appears clear on its face— Notice of Dismissal may be filed "before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs." The defendants did neither. In fact, the defendants' motions are motions to dismiss pursuant to

---

7. Likewise, the treatise authorities reject *Harvey Aluminum.* "[T]he sounder view and the weight of authority" suggest that a single defendant may be dismissed even if other defendants remain in the case. C. Wrignt and A. Miller, *Federal Practice & Procedure,* Civil § 2362 at 149–150 (1971). "Whether the elimi-nation of the nondiverse party is based on Rule 15(a), Rule 21, Rule 41(a) or the inherent powers of the federal court, a proper result is reached." 5 J. Moore, W.L. Lucas & J. Wicker, *Moore's Federal Practice,* ¶ 41.06–1 (2nd ed. 1985).

Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 9(b). The Court holds that, although there may be a point in legal proceedings where the purpose of Rule 41(a)(1)(i) would be better served by abandoning a literal interpretation, the instant case does not approach that point. *Thorp. v. Scarne,* 599 F.2d 1169, 1176 (2nd Cir.1979).[8]

The Fifth Circuit has construed the relevant language in Rule 41. Where no answer had been filed but defendants had filed motions to dismiss under 12(b)(1) and 12(b)(6) before plaintiff filed his Notice of Dismissal, the Court ruled that because no affidavits or other matters outside the pleadings were submitted, the 12(b) motions were not converted to motions for summary judgment. *Nix v. Fulton Lodge No. 2 of International Ass'n of Machinists & Aerospace Workers,* 452 F.2d 794, 797–98 *cert. denied,* 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972).[9] In one case, even the presence of affidavits did not convert a 12(b) motion to dismiss into a motion for summary judgment. *Terry v. Pearlman,* 42 F.R.D. 335, 337 (D.Mass.1967). *But see Tele-Views Co. v. S.R.B. TV Publishing Co.,* 28 F.R.D. 303 (E.D.Pa.1961).

■ The Court agrees with the Fifth Circuit and construes the plain meaning of Rule 41(a)(1)(i) to mean that none of the defendants' motions bar the Lerouxs' voluntary dismissal of the defendant Stark.

■ The same result may be reached through an alternative route. If the Lerouxs' Notice relates back to the date they filed their complaint, January 2, 1985, the defendants' motion to dismiss for lack of subject matter jurisdiction is moot because the "relation back" cures the jurisdictional defect directly. On similar facts, the District Court of Louisiana ruled that to refuse plaintiffs the right to amend their petition in order to delete the nondiverse party would be an abuse of discretion. *Brown v. Texas & Pacific Railroad Co.,*

392 F.Supp. 1120, 1124 (W.D.La.1975) (allowing plaintiffs to perfect jurisdiction by a release of a defendant and holding that the release would operate retroactively to the time of the filing of the complaint). Although the Lerouxs could have amended their complaint to drop Stark through either Rule 21 or Rule 41, neither rule expressly excludes application of the other; the use of either procedure is proper. *Id.* at 1124.

> When the suit was voluntarily dismissed [as to all defendants but one] the amendment of the pleadings related to the date of filing of the original suit and cured the defect in the district court's jurisdiction of the controversy between the remaining parties. [Citations omitted]

*Finn v. American Fire & Casualty Co.,* 207 F.2d 113 (5th Cir.1953), cited with approval, *Brown v. Texas & Pacific Railroad Co.,* 392 F.Supp. 1120, 1125 (W.D.La.1975). Accordingly, the Court rules that, as an alternative ground of decision, the Lerouxs' Notice of Dismissal relates back to January 2, 1985.

By either mode of analysis, this Court has subject matter jurisdiction. Moreover, insofar as this Court understands the policy behind rule 41(a)(1) to allow plaintiffs to dismiss as of right before the merits of the case have been reached or the issue joined, the Court rules the Lerouxs' use of Rule 41(a)(1) correct.

### IV. Rules 12(b)(6) and 9(b)

The foregoing analysis applies equally to Lomas' motions to dismiss pursuant to 12(b)(6) and 9(b). At least one case applies this logic directly to a 12(b)(6) motion, specifically excluding it from the class of procedural bars in Rule 41—answers or motions for summary judgment. *Nix v. International Association of Machinists and Aerospace Workers,* 452 F.2d 794, 797–98 (5th Cir.1972). The Court agrees and so rules.

---

**8.** While the defendants were not required to file an answer—and the several motions are formally proper, the Court notes that had the motions been part of an answer, the Lerouxs' Notice of Dismissal would have been barred.

**9.** In *Nix,* however, plaintiff dismissed by stipulation under Rule 41 rather than unilaterally.

Rule 9(b) is also a motion to dismiss. Just as the 12(b) motions, Rule 9 addresses preliminary matters normally adjudicated early in the litigation of a case. By the Federal Rules themselves, a Rule 9 motion may be asserted prior to a responsive pleading to effect the dismissal of the action. Therefore, the Court concludes that a Rule 9 motion to dismiss for failure to plead fraud with particularity is neither an answer nor a motion for summary judgment within the language of Rule 41. In reaching this conclusion, the Court reiterates that, although there may be a point in a legal proceeding where the purpose of Rule 41(a)(1)(i) would be better served by abandoning a literal approach, the instant case has not reached that point. *Thorp v. Scarne*, 599 F.2d 1169, 1176 (2d. Cir.1979).

In sum, the Court holds the Lerouxs' Notice of Dismissal appropriate and not barred by the Lomas' filing of motions to dismiss pursuant to Rules 12(b)(1), 12(b)(6), or 9(b) because 1) none of Lomas' several motions are motions for summary judgment or answers within the limits of Rule 41, and 2) the dismissal relates back to the time the complaint was filed.

## V. The Defendants' Motions to Dismiss Considered on their Merits

### A. Fed.R.Civ.P. 12(b)(6)

For purposes of a motion to dismiss, all averments of the plaintiff's complaint are taken as true. *See e.g., Gavrilles v. O'Connor*, 579 F.Supp. 301, 303 (D.Mass. 1984). A court should not allow a motion to dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Id.* at 303 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 [1957] ).

■ Here, the complaint alleges a series of events by which the Lerouxs found themselves with inadequate insurance to cover their losses when their home at 30 Topcliff Street in Billerica burned on October 24, 1982. Taking these allegations as true, the trier of fact could find that Lomas and American Bankers knowingly acted in a way to effect the cancellation of the Lerouxs' proper insurance and leave them inadequately protected against loss by fire. Further, taking the Lerouxs averments as true, the trier of fact could find a breach of contract, violation of Mass.Gen.Laws ch. 93A, or that the defendants and their agents negligently failed to notify the Lerouxs or explain the new coverage to them. Finally, a trier of fact could find that the defendants or their agents actually made false representations about the scope of the insurance.

Under well accepted standards, the Court rules that the complaint avers a set of facts which would entitle the Lerouxs to relief. Defendants' motion to dismiss pursuant to Rule 12(b)(6) is Denied.

### B. Fed.R.Civ.P. 9(b)

■ It is well settled that Rule 9 requires specification of the time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred. *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984) (citing *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 [1st Cir.1980] ). This special pleading requirement provides the defendant with notice of the grounds on which plaintiff's fraud claim rests. *Id.* at 13, citing *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d at 228–29. The instant complaint contains sufficient specification of the time, place and content of the alleged false representation as to provide the defendants notice of the grounds on which the Lerouxs' fraud claim rests. Therefore, the defendants' motion to dismiss pursuant to Rule 9(b) is Denied.

## VI. Fed.R.Civ.P.11

The defendants also append a motion for the award of costs and expenses pursuant to Fed.R.Civ.P. 11. In relevant part Rule 11 provides:

[T]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other

papers; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing laws, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

■ The defendants point to the diversity defect in the Lerouxs' complaint as grounds for Rule 11 sanctions, here costs and expenses. Lomas calls the Court's attention to *Blackwell v. Elsten*, No. 84–169, slip op. at 8–9 (D.D.C. Dec. 11, 1984) where, imposing sanctions, Judge Gessell noted "[P]laintiff deliberately attempted to manufacture diversity jurisdiction fraudulently, and that his complaint in its allegations of diversity was filed in bad faith and without a reasonable basis in law or fact." Considering the complaint in context and as a whole document, this Court finds no evidence of sham or false allegations at the core of the recited legal injury. While the Lerouxs' counsel may have been egregiously in error when he initially besought a federal forum, he appears to learn quickly, responding promptly and, as events have proved, skillfully, in managing to keep his clients' case afloat. The Court thus rules that the Lerouxs' conduct falls short of such misbehavior as makes the imposition of sanctions appropriate. Therefore, the defendants' motion to award costs and expenses pursuant to Fed.R.Civ.P. 11 is Denied.

### VII. Conclusion.

The Court has been mindful of the advice of Fed.R.Civ.P. 1 and 8: that the Court shall construe the scope of the rules "to secure the just, speedy and inexpensive determination of every action" and shall construe the pleadings themselves "as to do substantial justice." Based on the discussion above, the defendants' several motions are hereby DENIED.